UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RYAN PLACE,

                                    Plaintiff,

vs.

N. VESPA, CERT CORRECTIONAL
OFFICER, J. CLOUDEN, CERT
CORRECTIONAL OFFICER, JOHN
DOES 1-4, OSI INVESTIGATORS, JOHN
DOE 5, CORRECTIONS SERGEANT,
JOHN DOES 6-10, CERT
CORRECTIONAL OFFICERS,

                                    Defendants.

_____

22-CV-6356 CJS-MJP

DECISION and ORDER

INTRODUCTION

Ryan Place ("Place" or "Plaintiff"), an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), proceeding *pro se*,

commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983), alleging that while

he was confined at Elmira Correctional Facility ("Elmira"), defendant Corrections Officers

N.Vespa ("Vespa") and J. Clouden ("Clouden") punched and kicked him during a cell frisk,

without provocation, thereby subjecting him to excessive force, and that the other

defendants failed to intervene, all in violation of the Eighth Amendment to the U.S. Constitution.  Now before the Court is Defendants' unopposed motion (ECF No. 51) for summary judgment, based primarily on Plaintiff's alleged failure to exhaust his administrative prison remedies before commencing this action, as required by 42 U.S.C. § 1997e(a) ("§ 1997e(a)").  Defendants alternatively maintain that if the action is not dismissed pursuant to § 1997e(a), the Court should dismiss any claims for money damages asserted against them in their official capacities.  Plaintiff did not respond to Defendants' motion, despite being given multiple opportunities to do so.  Nevertheless, for reasons discussed below, the Court finds that there is a triable issue of fact as to whether administrative remedies were available to Plaintiff, and, accordingly, Defendants' motion is denied insofar as it is based on § 1997e(a).  The motion is granted in part, insofar as it seeks dismissal of claims for money damages against Defendants in their official capacities.

## BACKGROUND

The facts contained in Defendants' Statement of Facts [#15-1] are unopposed, and are therefore deemed admitted. *See*, Local Rule of Civil Procedure 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.").  To the extent that any other relevant facts are disputed, the Court views them in the light most-favorable to Plaintiff, as the non-moving party.  Since the Court presumes that the reader is familiar with the record, it will focus only on those facts necessary to explain its decision.

On August 22, 2022, Plaintiff filed a Complaint ("Complaint") in this Court, alleging that on September 2, 2021, during a cell frisk at Elmira, Vespa and Clouden punched and kicked him numerous times, without provocation, while other corrections officers failed to intervene.   The incident took place in the context of a riot or uprising by certain inmates at Elmira, in response to which DOCCS had sent corrections officers, including Vespa and Clouden, who were members of a Correction Emergency Response Team ("CERT") from a different DOCCS facility, to secure the Elmira facility. ECF No. 51-8 at pp. 43, 48-50.   While Vespa and Clouden conducted the cell frisk, a Corrections Sergeant and four members of DOCCS' Office of Special Investigations ("O.S.I.") were standing "less than 100 feet from Plaintiff's cell." Complaint at p. 4.   During the cell frisk, Vespa punched Plaintiff in the face without provocation, knocking him to the ground, and then Vespa and Clouden beat and "stomped" Plaintiff, applied handcuffs to Plaintiff, and continued the beating. *Id.*   The Corrections Sergeant and O.S.I. officials who were nearby did not intervene.   Vespa and Clouden then escorted Plaintiff to the Special Housing Unit ("S.H.U."), and later issued him a misbehavior report, for having committed disciplinary infractions during the cell frisk. *Id.*[1]

Officials at Elmira found Plaintiff guilty of some of the aforementioned disciplinary infractions, and transferred him to Southport Correctional Facility ("Southport") to serve a one-month disciplinary sentence in the Special Housing Unit ("SHU"), after which he was returned to Elmira.   More specifically, the record indicates that Plaintiff was transferred to

---

[1] During Plaintiff's deposition he could not recall the exact disciplinary charges in the misbehavior report, *see*, Plaintiff's Deposition at p. 83, but Defendants' Memorandum of Law indicates that the charges were for making threats, refusing a direct order, refusing a search or frisk, and a "movement regulation violation," *see*, Def. Memo of Law, ECF No. 51-9 at p. 2.

Southport on September 3, 2022, and returned to Elmira thirty-nine days later, on October 12, 2022.[2]

The unsworn Complaint in this action alleges that while Plaintiff was at Southport, he filed "grievances," concerning the beating at Elmira: "Within days of being in Southport, the Plaintiff filed grievances and Prea reports[3] surrounding the beating of him[.]" ECF No. 1 at p. 5. The pleading does not mention Plaintiff filing any similar grievance at Elmira.

However, during his deposition in this action, Plaintiff testified under oath that he filed grievances about the alleged assault at both Southport and Elmira. Plaintiff, who has produced no copies of the alleged grievances in discovery, testified that he was unsure of the exact dates he had filed them, but estimated that the first grievance was filed "within a week" of him being transferred to Southport, and that the second grievance was filed at Elmira, "[p]robably in the first week or two of October, after [he] had been released from Southport." Pl. Deposition at p. 35.

Plaintiff testified, though, that he neither received a response to, nor appealed, either grievance:

Q. [D]id you usually write grievances?

A. No. I really usually don't. I try to take the informal approach because grievances are a more formal approach. And though they get things done, I – I – I find that you tend to get more done when you do the informal approach. And – and people are more approachable when you're not leaving a paper trail behind them.

---

[2] At his deposition, Plaintiff could not recall the exact date that he was returned to Elmira, except that it was in October. However, Defendants' unopposed Rule 56 Statement, which the Court treats as true, indicates that Plaintiff was returned to Elmira on October 12th.

[3] "Prea reports" apparently refers to the Prison Rape Elimination Act. Plaintiff is not claiming in this action that he was subjected to any type of sexual assault by Defendants.

Q. Yeah, that is true.  But, -- but, you know, this is a – a legal proceeding.  So did you – did you write any grievances with regard to the – this – this particular issue?

A. *Yeah.  Actually, I wrote two of them.  I wrote one while I was in Southport and then one when I returned back to Elmira.*

Q. Okay.

A. I was told – I was told by the two grievance representatives that are civilians in Southport that they were investigating and they'll get back to me.  But I left there, and then they closed Southport.  *So I never got answers from that.  . . .  And then when I went back to Elmira because I hadn't gotten answers, I filed another one.*  And Sergeant Galpin, who is the Grievance Sergeant in Elmira, had told me that I don't need to grieve it because I had a pre-report and an O.S.I.  investigation.  But if I needed it in the future that I needed to [sic], he'd let me know.

*** 

Q. So from what I – what we talked so far, I understand you're familiar with the grievance process, right?

A. Somewhat.  I've only – I mean, as you've seen, I've only filed a couple of grievances.  And the ones that I filed, they were usually agreed upon and then somebody at grievance told me we were going to appeal to Albany to get a decision.  But other than – I really have – I've miniscule.  I – I – I don't like the grievances.  It's – it's – I – I don't want to say that it's a broken system, but it's a broken system.  It doesn't  -- it doesn't work.

Q. Yes.  So now – but that is a procedure that we – like it or not, we have to follow.  So now, first, you file a – a grievance to I.G.R.C., right?

A. No.  We – we—we file it right directly to grievance.

Q. Yeah. The Grievance Committee, right?

A. Yeah. Yeah.

Q. Yes. And then after some days or so, then -- then you appealed to the superintendent, right?

A. I don't know how the appeal process works. I've -- I don't think I've ever -- I think on one [prior grievance unrelated to this action] I appealed. And that was because the grievance --- actually, it was Sergeant Galpin. It was dealing with the -- the kiosk system had -- had told me, we're -- I'm in agree[ment] with you. However, you need to -- to -- to -- to appeal so that we can get a [Central Office Review Committee] [("]C.O.R.C.[)"] decision on it. But --

Q. Yes.

A. -- I'm going to [be] honest, I really don't.

Q. So the C.O.R.C. -- so -- so you know about C.O.R.C., right?

A. I -- yeah, no. I -- I -- I couldn't tell you what it means. I have an idea that it's basically -- in layman terms, basically the higher courts making a decision I guess you'd say?

ECF No. 51-8 at pp. 26, 28-30. Plaintiff, though, admitted later in the deposition that he had filed appeals to CORC regarding prior grievances unrelated to this action. *Id.* at 29-32.

Regarding the grievance that Plaintiff claims to have filed at Elmira concerning this action, and what Sergeant Galpin allegedly told him about that grievance, Plaintiff further testified:

Q. And then while you're in Elmira, and you wrote the grievance, did you receive a response to that grievance?

A. A written response? No, I had a verbal response from Sergeant Galpin. I worked as a – as a – I was the mail carrier, so to speak. I pushed a mail cart throughout the facility, so I was able to go to certain places in the jail. And in passing, he had asked me if I'd written a grievance, and I said, yes. And I explained to him what the grievance was about. And he said that he had received the grievance. But at that point, he said there was no reason for me to have a grievance. That he was going to – I don't know if you want to say dismiss it or throw it away because I had already had a PRIA report and there was an ongoing O.S.I. investigation.

6

ECF No. 51-8 at p. 42.

Plaintiff further testified, though, that regardless of what Sergeant Galpin had told

him, he would not have appealed the Elmira grievance, since he never received a written

response to the grievance:

> Q. [R]egardless of what Sergeant Galpin told you, you did not appeal --
> because you didn't receive I.G. – grievance response, you didn't appeal to
> the superintendent, right?
>
> ***
>
> A.  You said regardless of what Sergeant Galpin said, I did not appeal to
> the superintendent.  No, I didn't appeal to the superintendent because of
> what Sergeant Galpin had said I'd say. [sic]  But no and yes because I never
> received any documentation.  So I wouldn't appeal because I didn't get a
> decision.  So both reasons really.
>
> Q. And also you – thank you.  Thank you, Mr. Place.  But you did not also
> appeal to CORC or the Central Review Committee, right?
>
> A. No, I didn't.  No.

ECF No. 51-8 at p. 44.

Indeed, Plaintiff indicated that he did not know how he could have filed an appeal

for either of the grievances that he claims to have filed relating to this action, since he

never received responses from the Inmate Grievance Committees at Southport or Elmira:

> Q. So -- so you indicated previously that you wrote a grievance and [gave
> it] to someone. Basically, your understanding is it was filed. And after you
> [did that,] did you appeal to the superintendent?
>
> A. For the ones that [pertained to this action]?
>
> Q. Yes.
>
> A. No, because I never got a decision from the facility. I don't know -- I
> wouldn't know - . . .  how to appeal if I never received a decision.

Pl. Deposition at p. 33.

In sum, Plaintiff testified that he filed grievances at both Southport and Elmira, and that he did not appeal either one, for essentially two reasons:

> [T]wo reasons that I never appealed. Number one, I was told by Sergeant Galpin that I would not need a grievance because I had a pre-written investigation and I had an O.S.I. Investigation. And then number two, obviously, both the grievances that I wrote in Southport and the one I wrote in Elmira, I had received no response to. I wouldn't know have to – I – I would not [know] how to appeal something that never had a decision made.

ECF No. 51-8 at pp. 38-39; *see also, id*. at 33 ("Q. [D]id you appeal to the superintendent? . . . A. No, because I never got a decision from the facility. I don't know – I wouldn't know how -- . . . how to appeal if I never received a decision.").

Following the completion of discovery in this action, Defendants filed the subject motion for summary judgment, based primarily on Plaintiff's failure to exhaust administrative remedies. More specifically, Defendants maintain, contrary to Plaintiff's bald assertions about having filed grievances concerning the alleged assault, that there is no evidence that he ever did so, and, further, that even if he did, he admittedly never exhausted the grievance process, by filing appeals to the facility superintendent or Central Office Review Committee ("CORC").

For support, Defendants have submitted an affidavit from Misty O'Dell ("O'Dell"), Supervisor of the Incarcerated Grievance Program ("IGP") at Elmira, who avers that Plaintiff was instructed how to use the Inmate Grievance Program when he entered DOCCS custody, and that there is no record of Plaintiff ever filing a grievance or appeal at Elmira concerning the alleged assault by Defendants:

> Assistant Attorney General informed me that Ryan Place, DIN 14A3536 has filed a lawsuit on August 22, 2022, alleging that while he was in DOCCS

custody on September 2, 2021, at Elmira Correctional Facility, he was assaulted by Officer Vespa and Officer Clouden in the Plaintiff's cell during a cell frisk.

When I received the request from the Assistant Attorney General, I reviewed the grievance records and log at the Elmira Correctional Facility and there was no record of Plaintiff filing a grievance or grievance appeal regarding a September 2, 2021, incident.

\*\*\*

Ryan Place has completed a Facility Orientation Program at the Great Meadow Correctional Facility in 2017, and during this orientation program Ryan Place received information about Inmate Grievance Process.

ECF No. 51-5 at pp. 1-2.

Defendants have also submitted an affidavit from Rachael Seguin ("Seguin"), Director of the Incarcerated Grievance Program ("IGP") for DOCCS and custodian of records for CORC, who, after explaining the procedures for exhausting grievances set out in 7 N.Y.C.R.R. §§ 701.5 & 701.8, avers that there is no record of Plaintiff filing a grievance or appeal at Southport concerning the alleged assault by Defendants, nor any record of an appeal to CORC concerning the incident.   In particular, Seguin states, in pertinent part:

[T]he CORC computer database contains records of all appeals of grievances received from facility IGP Supervisors, including those reviewed under the expedited procedure of 7 N.Y.C.R.R. § 701.8, which were heard and decided by CORC since the 1990s.

I have reviewed the records for all grievances received by CORC for Ryan Place, DIN 14-A-3536.

The records show that Ryan Place filed two appeals to CORC between 2020 to 2023[, neither of which pertain to this action.]  A copy of the printout of grievance appeals received by CORC for Ryan Place, DIN 14-A-3536, as of January 17, 2023, is attached as Exhibit A to this declaration.

> Southport Correctional Facility was closed as of March 2022. I have access to the grievance logs maintained by Southport Correctional Facility.
>
> A review of the records shows that Ryan Place did not file any grievances at Southport Correctional Facility or appeals to CORC regarding an alleged use of force claim against Officer N. Vespa and Officer J. Clouden, or any failure to protect claim, or any incidents on September 2, 2021.

ECF No. 51-6 at pp. 2-3.

Additionally, Defendants have submitted an affidavit from DOCCS Sergeant Robert Galpin, who denies Plaintiff's contention that Galpin told him that he did not need to file a grievance. In this regard, Galpin states, in pertinent part:

> Assistant Attorney General Muditha Halliyadde contacted me and informed me that incarcerated individual Ryan Place, DIN 14A3536, testified at a deposition that I was the grievance sergeant at the Elmira Correctional Facility in 2021, and that I said Ryan Place does not need to grieve because he had pre-report to OSI. First, I do not recall meeting or talking to Ryan Place at any time at Elmira Correctional Facility regarding his grievance or an investigation by the Office of Special Investigation ("OSI"). . . . I do not know anything about an OSI investigation involving an issue with Ryan Place. . . . Therefore, I fully deny talking to Ryan Place at any time regarding a grievance or any other discussion related to his alleged grievance or an OSI investigation.

ECF No. 51-4 at pp. 1-2.

Defendants alternatively maintain that they are entitled to partial summary judgment, insofar as Plaintiff is seeking money damages against them in their official capacities, which are barred by the Eleventh Amendment.

Along with their motion, Defendants served Plaintiff with a copy of an "*Irby*" notice to *pro se* litigants, as required by Rule 56.2 of the Local Rules of Civil Procedure. *See, Capogrosso v. Lecrichia*, No. 07 CIV. 2722 (BSJ), 2010 WL 2076962, at *4 (S.D.N.Y. May 24, 2010) ("[A] *pro se* party must be given express notice of the consequences o

failing to respond appropriately to a motion for summary judgment[.]")  (citing *Irby v. New York City Transit Auth.*, 262 F.3d 412, 413–14 (2d Cir.2001)).

Plaintiff did not file a response to Defendants' motion.  In that regard, upon receiving Defendants' motion, the Court issued an Order, ECF No. 52, directing Plaintiff to file any response within 28 days.  Approximately two months thereafter, Plaintiff requested additional time to file a response, ECF No. 53, which the Court granted, ECF No. 54.  Plaintiff later requested a further extension of time, ECF No. 55, which the Court also granted, ECF No. 56.  However, despite the Court having given Plaintiff a total of approximately nine months in which to file a response, he never did so.

## DISCUSSION

Defendants have moved for summary judgment, pursuant to Fed. R. Civ. P. 56, which may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

Additionally, the movant must demonstrate, and not merely assert, that he is entitled to judgment under the relevant principles of law. *See, Baker v. Anschutz Expl. Corp.*, 68 F. Supp. 3d 368, 373 (W.D.N.Y. 2014) ("While the absence of any genuine dispute of material fact is a precondition for summary judgment, the crux of a summary judgment analysis is whether the movant has established entitlement to judgment as a matter of law.") (quoting 11–56 MOORE'S FEDERAL PRACTICE—CIVIL § 56.20 (Matthew Bender 2014)), adhered to on reconsideration, No. 11-CV-6119 CJS, 2016 WL 981858 (W.D.N.Y. Mar. 15, 2016); *see also*, *Darley v. U.S.*, No. 22-CV-00714 (PMH), 2025 WL 1159518, at *3 (S.D.N.Y. Apr. 21, 2025) ("Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law.  Simply put, the movant must separately establish that the law favors the judgment sought.") (citations omitted).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[4] To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom

---

[4] "The substantive law governing the case will identify those facts which are material and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Heard v. City of New York*, 319 F.Supp.3d 687, 692 (S.D.N.Y. 2018).

summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

In the instant case, Plaintiff has not opposed Defendants' motion. Nevertheless, the Court may not simply grant the motion on that basis:

> [E]ven where a summary judgment motion is wholly unopposed, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. In determining whether the moving party has met this burden the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.

*Gachette v. Metro N.-High Bridge*, 598 Fed.Appx. 803, 804 (2d Cir. 2015) (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d at 244 (internal citations and quotation marks omitted)).

Defendants primarily contend that this entire action must be dismissed since Plaintiff failed to exhaust his administrative remedies before commencing the action, as required by 42 U.S.C. § 1997e(a).  In that regard, the applicable law is clear:

> The [Prison Litigation Reform Act] [("]PLRA["")] provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust, a prisoner must "properly" comply "with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks and italics omitted).

*Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, No. 22-1375, 2024 WL 442454, at *2 (2d Cir. Feb. 6, 2024).

In the instant case, this means that since Plaintiff's claim arose from an incident at Elmira, he was required to properly exhaust his administrative remedies under the DOCCS grievance procedures existing at the relevant time. *See, Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself. [Consequently, the steps that are necessary] to comply with the grievance procedures will vary from system to system and claim to claim, because it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.") (citations and internal quotation marks omitted).

"The failure to exhaust in accordance with § 1997e(a) is an affirmative defense under the PLRA." *Walker v. Schult*, 45 F.4th 598, 612 (2d Cir. 2022) (citation and internal quotation marks omitted). "[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures which demonstrate that a grievance process exists and applies to the underlying dispute." *Edwards v. Destefano*, No. 23-7515, 2025 WL 1068317, at *2 (2d Cir. Apr. 9, 2025) (quoting *Williams v. Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016), citations and internal quotation marks omitted).

"If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . .

rendered a nominally available procedure unavailable as a matter of fact." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

More specifically, the test for determining whether nominally-available administrative remedies were actually available to an inmate in a particular case is as follows:

> A grievance process is available if an incarcerated person can use it to obtain the relief he or she seeks. *See Ross v. Blake*, 578 U.S. 632, 643, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016). "We have held that the test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 311–12 (2d Cir. 2020) (alteration adopted) (internal quotation marks and citations omitted). The Supreme Court has recognized three non-exclusive circumstances in which a grievance process may not be available for purposes of the PLRA and a court may excuse a failure to exhaust: (1) when the grievance process is a "simple dead end" because officers are "unable or consistently unwilling to provide" relief; (2) when the administrative scheme is "so opaque that it [is], practically speaking, incapable of use"; and (3) when "prison administrators thwart inmates" seeking relief by means of "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44, 136 S.Ct. 1850. "Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (alteration adopted) (internal quotation marks and citations omitted). "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact."

*Moco v. Janik*, No. 22-307-PR, 2023 WL 6632952, at *2 (2d Cir. Oct. 12, 2023), *cert. denied*, 145 S. Ct. 597, 220 L. Ed. 2d 233 (2024); *see also, Saeli v. Chautauqua Cnty., NY*, 36 F.4th 445, 453 (2d Cir. 2022) ("If the defendant has met its burden of establishing

the existence and applicability of the grievance policy, the plaintiff bears the burden of establishing *de facto* unavailability.").

Here, Defendants have met their initial burden, on summary judgment, of demonstrating that Plaintiff failed to exhaust the applicable DOCCS grievance procedures that were available to him at the relevant time, which, they maintain, were governed by 7 NYCRR § 701.5. That is, Defendants have submitted sworn affidavits indicating that Plaintiff completely failed to utilize the established DOCCS inmate grievance procedures, since there is no evidence he ever filed any grievances or appeals concerning the alleged assault by Vespa and Clouden.

Plaintiff has not specifically controverted those affidavits, but the record nevertheless indicates that there are triable issues of material fact that make summary judgment inappropriate. In particular, and contrary to Defendants' affidavits, Plaintiff's sworn deposition testimony indicates that he submitted grievances concerning the incident, at both Southport and Elmira, using the Inmate Grievance Program. Consequently, there is a triable issue of fact as to whether Plaintiff attempted to utilize the grievance procedures, but was thwarted by DOCCS staff who failed to file the grievances.

Defendants appear to maintain that this point is irrelevant, since even assuming Plaintiff attempted to file grievances, he admittedly never filed any appeals relating to them, and therefore never properly exhausted the administrative process. However, Plaintiff offers two reasons why he did not appeal: First, because Sergeant Galpin misled him, by telling him that he did not need to pursue the grievance process at all; and, second, because regardless of what Galpin told him, he never received any response to his grievances, and did not know how to appeal in that situation. The Court liberally

16

construes Plaintiff's sworn testimony about these reasons as an argument that the administrative grievance procedures were unavailable to him.

However, the first of these reasons lacks merit, and fails to raise a triable issue of fact as to whether administrative remedies were available to Plaintiff, since by the time the conversation between Plaintiff and Galpin took place, Plaintiff's time to appeal the grievance that he submitted at Southport had already passed.  In this regard, Plaintiff vaguely maintains that his conversation with Galpin, in which Galpin told him that he did not need to file a grievance, took place at Elmira in early-to-mid-October, at least forty days after the alleged assault on September 2, 2022.  Defendants' unopposed Rule 56 Statement, which the Court accepts as true, indicates that such conversation, if it occurred, had to have taken place after October 12, 2022, the date Plaintiff was returned to Elmira.  Either way, by the time Plaintiff arrived back at Elmira and spoke with Galpin, the deadlines for him to either file a grievance concerning the incident, or to appeal the grievance he submitted at Southport, had already passed.

In this regard, while Plaintiff maintains that he attempted to file a new grievance once he returned to Elmira, the 21-day administrative deadline for filing a grievance concerning the alleged assault had already passed,[5] and he does not claim that he requested any extension of that deadline.  Furthermore, the applicable regulations do not provide for an inmate to file a second grievance concerning the same event, simply

---

[5] *See, Williams v. Correction Officer Priatno*, 829 F.3d 118, 119 (2d Cir. 2016) ("The grievance process begins with the filing of a complaint within 21 days of an alleged incident. N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5(a)(1).")."); *see also, Adams v. O'Hara*, No. 916CV0527GTSATB, 2019 WL 652409, at *7 (N.D.N.Y. Feb. 15, 2019).  ("Filing an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies.") (collecting cases).

because he did not receive a response to his earlier grievance.  Rather, it is well settled that in such a situation, Plaintiff, upon receiving no response to his grievance within the specified time, was required to file an appeal, at Southport.[6]  However, by the time Plaintiff spoke to Galpin at Elmira, the deadline for filing an appeal relating to the grievance Plaintiff submitted at Southport had also passed.  In that regard, it seems that Plaintiff's grievance would have been classified as a harassment grievance under 7 NYCRR § 701.8,[7] in which case the Southport superintendent was required to submit a response within 25 days, and, if the superintendent failed to respond, Plaintiff could appeal to CORC within seven (7) days.  *See*, 7 NYCRR § 701.8(e)-(h).[8]  Consequently, Galpin's alleged statement to Plaintiff was not the cause of Plaintiff's failure to appeal the Southport grievance.

In sum, Plaintiff's attempt to file a second grievance at Elmira was both untimely and duplicative, making it procedurally improper, and, therefore, his testimony about what Galpin allegedly told him at Elmira in October 2022, even if true, fails to raise a triable issue of fact as to whether the relevant administrative procedures were available to him.

---

[6] *See, e.g., Williams v. Correction Officer Priatno*, 829 F.3d at 120 ("If an inmate is transferred to another facility while a grievance is pending, a response to the grievance shall be mailed to the inmate at the new facility. *Id*. § 701.6(h)(1). "If the grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed within seven calendar days after receipt." *Id*. § 701.6(h)(2).").

[7] *See*, 7 NYCRR § 701.2(e), defining "harassment grievances" as "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate."

[8] The procedures for non-harassment grievances are different. *See, e.g., Barnett v. Diaz*, No. 19-CV-00415 (NSR), 2022 WL 1912246, at *1 (S.D.N.Y. June 2, 2022) ("The grievance process involves three steps: (i) the incarcerated individual must file a complaint with the IGRC within 21 days of an alleged incident, and the IGRC has 16 days to attempt to formally resolve the complaint or hold a hearing; (ii) if dissatisfied, the individual may appeal the recommendation to the Superintendent within seven days after receipt of the response, the Superintendent then has 20 days to render a response; and (iii) if dissatisfied, the individual may appeal the decision to DOCCS' Central Office Review Committee ("CORC") within seven days.") (citations omitted).

However, the second reason that Plaintiff offers for failing to appeal has merit, and requires the denial of Defendants' motion, since it raises a triable issue of fact as to whether the grievance process was actually available to Plaintiff.  On this point, Plaintiff testified that he did not know how he could have filed an appeal while at Southport, since he never received a response to his grievance.  In *Williams v Priatno*, 829 F.3d 118 (2d Cir 2016) ("*Williams*"), the Second Circuit addressed the situation of an inmate in SHU who received no response to a grievance because staff failed to file it for him, and found that the appeal procedures were not actually available to him, since the regulations did not address how to appeal an unfiled grievance:

> Prison regulations provide that inmates in the SHU may file grievances by giving the complaint to a correction officer to forward to the grievance clerk. *See* NYCRR tit. 7, § 701.7. The regulations also provide that an inmate may appeal a grievance "to the next step" if he does not receive a timely response. *Id*. § 701.6(g)(2); *see also id*. § 701.8(g). Defendants assert that, even if Williams's grievance had not been filed and despite the fact that he had been transferred to a new facility prior to receiving a response, he still could have attempted to appeal the grievance in accordance with sections 701.6(g)(2) and 701.8(g).
>
> However, even if Williams technically could have appealed his grievance, we conclude that the regulatory scheme providing for that appeal is "so opaque" and "so confusing that ... no reasonable prisoner can use [it]." *Ross*, 136 S.Ct. at 1859 (quoting Tr. of Oral Arg. 23). The regulations simply do not contemplate the situation in which Williams found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance.
>
> We accept as true [that corrections staff never filed Williams's grievance]. Under that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies. On their face, the regulations only contemplate appeals of grievances that were actually filed. For example, if the grievance had never been filed, the superintendent would never have received it and the timeline for her to provide a response within 25 days "of receipt of the grievance" would never

have been triggered. NYCRR tit. 7, § 701.8(f). In turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect. *See id*. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC."). Accordingly, the regulations give no guidance whatsoever to an inmate whose grievance was never filed.

***

Furthermore, if the regulations outlined above, as applied to a prisoner in Williams's situation, were not already "so confusing" that "no ordinary prisoner can discern or navigate [them]," *Ross*, 136 S.Ct. at 1859, their obscurity was compounded by the fact that Williams was transferred to another facility approximately two weeks after giving his grievance to the correction officer. Defendants contend that a transfer does not affect an inmate's ability to appeal his grievance to the next step, pointing to a provision in the regulation that provides: "If the [transferred] grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed within seven calendar days after receipt." NYCRR tit. 7, § 701.6(h)(2). However, this provision presumes not only that the grievance was actually filed, but also that the inmate received an appeal form that he can sign and mail back. The regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response.

For the foregoing reasons, we conclude that the grievance procedures that were technically available to Williams are so opaque and confusing that they were, "practically speaking, incapable of use." *Ross*, 136 S.Ct. at 1859. *Accordingly, in giving his grievance to the correction officer, Williams exhausted all administrative remedies that were available to him*. 42 U.S.C. § 1997e(a). To avoid confusion going forward, we recommend that DOCCS revise its grievance procedures to instruct inmates how to appeal grievances that were not properly filed by prison staff, and how to appeal a grievance, to which the inmate never received a response, after being transferred.

*Williams v. Correction Officer Priatno*, 829 F.3d at 124, 126-127 (emphasis added, footnote omitted).

The facts of the instant case are nearly identical to those in *Williams*, and, accordingly, the Court finds that there is a triable issue of fact as to whether grievance procedures were actually available to Plaintiff at Southport.  Significantly, in this regard, viewing the record in the light most-favorable to Plaintiff, the Court assumes that Plaintiff, who was confined in the SHU, attempted to file a grievance at Southport by giving it to DOCCS employees, as he stated in his sworn deposition testimony.  In sum, on the present record, Defendants' motion must be denied insofar as it is based on 42 U.S.C. § 1997e(a).

However, Defendants maintain that this does not end the inquiry into the issue of exhaustion.  Rather, as part of Defendants' summary judgment motion, they have asked the Court, if it finds that there is a triable issue of fact as to exhaustion, to conduct a pre-trial hearing:

> To the extent the Court believes there is a question of fact regarding whether Plaintiff exhausted the administrative remedies, it is well-settled that the question of exhaustion should not go to the jury but rather should be determined by the Court via an evidentiary hearing. *See, e.g., Delgado v. Potter*, 2015 U.S. Dist LEXIS 18602, at *4-5 (NDNY 2015) ("With regard to plaintiff's claim that special circumstances exist which justify non-exhaustion, the Second Circuit has held that disputed facts do not convert exhaustion into a jury issue. Instead, the appropriate remedy would be to hold a hearing on the issue of exhaustion"), *citing Messa v. Goord*, 552 F.3d 305, 309 (2d Cir. 2011); *Ortiz v. Annucci*, 2019 U.S. Dist. LEXIS 55933, 2019 WL 1438006, at *9 (SDNY 2019) (scheduling an evidentiary hearing to determine whether the plaintiff satisfied the exhaustion requirement).
>
> Therefore, to the extent that [the] Court believes there is a question of fact remain[ing] as to whether Plaintiff exhausted the administrative remedies, Defendants respectfully request that issue to be determined by the Court via an evidentiary hearing.

ECF No. 51-9 at p. 12.    Defendants' request on this point is unopposed, since, again, Plaintiff filed no opposition.

Defendants are correct that Plaintiff is not entitled to a jury trial on the question of exhaustion under § 1997e(a). *See, Messa v. Goord*, 652 F.3d at 310 ("[W]e hold that the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA.") (Affirming district court's dismissal of inmate's § 1983 action pursuant to § 1997e(a), following a hearing conducted prior to jury selection.); *see also, Matthews v. Sweeney*, No. 9:17-CV-0503 (GTS/ML), 2025 WL 447734, at *6 (N.D.N.Y. Feb. 10, 2025) ("[T]he Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011).").

In this case, it appears that at an exhaustion hearing, Defendants could produce reliable evidence that administrative remedies were generally available, and that Plaintiff nevertheless failed to exhaust those remedies.    What is less clear is whether Plaintiff could then demonstrate that such remedies were actually unavailable to him. *See, Saeli v. Chautauqua Cnty.*, NY, 36 F.4th 445, 453 (2d Cir. 2022) ("If the defendant has met its burden of establishing the existence and applicability of the grievance policy, the *plaintiff* bears the burden of establishing *de facto* unavailability.") (emphasis in original).

In this regard, Plaintiff maintains, in sworn deposition testimony, that he submitted a grievance for filing at Southport, and that DOCCS employees accepted the grievance from him and told him that they would investigate it and get back to him, but never did.    If the Court were to credit Plaintiff's testimony on that point, then, as discussed above, he

would be excused from exhausting, pursuant to *Williams v. Priatno*, even though no grievance was actually filed.

However, Plaintiff faces a tough challenge in that regard, since, for example, his description of the grievance is vague, he kept no copy of the alleged grievance, he cannot specify an exact date on which he allegedly submitted the grievance for filing, and he has not identified the "civilians" at Southport to whom he allegedly gave the grievance.    In addition, Plaintiff admits that he generally avoided filing grievances, since he did not believe they accomplished anything, which begs the question why, if that is true, he would have filed a grievance concerning the subject incident.

Suffice it to say, then, that Plaintiff, a twice-convicted felon,[9] may have a difficult time establishing, based just on his own word, that he actually submitted a grievance.  On the other hand, the Court does not recall the present record containing any contrary evidence on this point from Defendants, such as affidavits from DOCCS staff at Southport who might have witnessed whether Plaintiff actually submitted a grievance for filing.    In any event, the Court will grant Defendants' request for an exhaustion hearing, in that, it will plan to schedule such a hearing prior to trial, at a date to be determined.

The Court will also grant Defendants' alternative, unopposed, request to dismiss any claims for money damages against them in their official capacities, to the extent that Plaintiff is asserting any such claim, since such claims are barred by the Eleventh Amendment. *See, e.g., Nat'l Rifle Ass'n of Am. v. Hochul*, No. 20-3187-CV, 2021 WL 5313713, at *2 (2d Cir. Nov. 16, 2021) ("The Eleventh Amendment bars claims for money damages against state officials in their official capacities[.]").

---

[9] *See*, Plaintiff's Deposition at pp. 16-17 (Describing Plaintiff's criminal convictions).

CONCLUSION

Defendant's Summary Judgment Motion (ECF No. 51) is denied in part and granted in part.  The motion is denied insofar as it seeks judgment based on Plaintiff's failure to comply with 42 U.S.C. § 1997e(a).  The motion is granted as to any claims for money damages that Plaintiff may be asserting against Defendants in their official capacities, which are dismissed.  The Court will schedule a pretrial conference at its earliest opportunity.

SO ORDERED.

Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

DATED:   October 27, 2025
               Rochester, New York